## COMMONWEALTH v. H. R. JOHNSON.

APPEAL BY COMMONWEALTH FROM THE COURT OF QUARTER
SESSIONS OF NORTHUMBERLAND COUNTY.

Argued May 26, 1891—Decided October 5, 1891.

The owner of a drug store, who takes no part in conducting the same
himself, but employs a duly certified pharmacist for said purpose, is
not subject to indictment, under § 6, act of May 24, 1887, P. L. 192, for
engaging as manager in the business of an apothecary or pharmacist,
without having obtained the certificate of competency and qualification
required by said act.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILL-
IAMS, MCCOLLUM and MITCHELL, JJ.

No. 383 January Term 1891, Sup. Ct.; court below, No.——
September Term 1890, Q. S.

On September 2, 1890, the grand jury returned as a true
bill an indictment in nine counts charging Horace Rufus John-
son with unlawfully, etc., engaging as manager in the business
of an apothecary and pharmacist, etc., without having obtained
a certificate of competency and qualification, etc., as required
by the act of May 24, 1887, P. L. 189.

At the trial, on September 5, 1890, the defendant pleaded
not guilty, and, the cause being submitted to the jury, a special
verdict was returned as follows:

" We find that the prosecution in this case was commenced
by Alonzo Robbins, president of the state pharmaceutical ex-
amining board, in Pennsylvania; that the defendant, Horace
Rufus Johnson, on the third day of June, 1889, became the
owner and proprietor of the business of an apothecary and
pharmacist, and of retailing drugs, chemicals and poisons, and
of compounding and dispensing the prescriptions of physicians,
which business was and continued to be carried on, from that
time to the present time, in the building known as the corner
drug store in the borough of Northumberland, county of North-
umberland and state of Pennsylvania, in the following manner,
to wit:

Statement of Facts.

" The said Johnson is the sole owner and proprietor of the said business, in the manner hereinafter stated and no other, and takes no part therein other than such as is hereinafter set out, viz.: The business was purchased and is conducted with his money and in his name; the title to the property in which said business is done is claimed by the said Johnson; his money pays the rent and all debts contracted in said business. One M. P. Hines, who is a registered pharmacist, duly registered by the state pharmaceutical examining board, in Pennsylvania, and holds a certificate of competency and qualification from said board, which entitles him to either conduct or carry on the business of an apothecary and pharmacist, and of retailing drugs, chemicals and poisons, and of compounding and dispensing the prescriptions of physicians, is employed by the said Johnson at a salary (which salary is paid out of the proceeds of the said business), to do all and everything to be done in and about said business. The said Hines orders and purchases in the name of the said Johnson all drugs, chemicals, poisons, goods and commodities used in carrying on said business, and the same are shipped and delivered in his (Johnson's) name; but the said Hines makes all sales and deliveries thereof made in and about said business to purchasers, compounds and dispenses all prescriptions of physicians compounded and dispensed at said drug store, and deposits in bank to the credit of said Johnson, all moneys arising from the proceeds of said business, which said moneys are the individual property of said Johnson. The drugs, chemicals, poisons, goods and commodities, so as aforesaid purchased by said Hines, are paid for by checks drawn by said Hines, as the various bills contracted for said drugs, etc., fall due, against the fund so by him, the said Hines, deposited in bank as aforesaid, which said checks are signed by the said Johnson. Drugs, chemicals and poisons are sold, and prescriptions of physicians compounded and dispensed at the said store and are delivered to purchasers labeled as follows:

CORNER DRUG STORE,
HORACE RUFUS JOHNSON, Proprietor.
DR. MARKS P. HINES, Manager.
Northumberland, Penna.

" But the only part the said Johnson takes in and about said

Opinion of Court below.

business is to sign the checks, so drawn by Hines, as aforesaid, and receive the money arising from the business so deposited in bank by the said Hines. The said Johnson was not engaged as proprietor in said business, at the time of the passage of the act of assembly entitled "An Act to regulate the practice of pharmacy and sale of poisons, and to prevent adulterations in drugs and medicinal preparations in the state of Pennsylvania," approved the twenty-fourth day of May, 1887. The said Johnson is not a graduate of an accredited medical college, and he has not obtained a certificate of competency and qualification from the state pharmaceutical examining board of Pennsylvania.

"If the court be of the opinion that these facts, either directly or indirectly, constitute an offence under the sixth section of the act aforesaid, then we find the defendant guilty in manner and form as he stands indicted; otherwise, we find the defendant not guilty and direct the prosecutor to pay the costs."

A rule for judgment on the verdict having been argued, the court, ROCKEFELLER, P. J., on February 17, 1891, filed the following opinion :

The first section of the act of May 24, 1887, P. L. 189, enacts as follows :

" That hereafter no person whomsoever shall open or carry on as manager, in the state of Pennsylvania, any retail drug or chemical store, nor engage in the business of compounding or dispensing medicines, or prescriptions of physicians, or of selling at retail any drugs, chemicals, poisons or medicines, without having obtained a certificate of competency and qualification so to do from the state pharmaceutical examining board, and having been duly registered as herein provided."

There is no punishment provided for in the act for a violation of the provisions of the said first section, but the sixth section enacts :

" That no person shall hereafter engage as manager in the business of an apothecary, or pharmacist, or of retailing drugs, chemicals and poisons, or of compounding and dispensing the prescriptions of physicians, either directly or indirectly, without having obtained such certificate as aforesaid. . . . . Any

Opinion of Court below.

person, who shall violate or fail to comply with the provisions of this section, shall be guilty of a misdemeanor; and on conviction before any court shall be punished by a fine not exceeding one hundred dollars, or be imprisoned in the county jail of the proper county for a term not exceeding one year, or either, or both, at the discretion of the court."

The facts found by the special verdict show that the defendant was the owner of a drug store; that he had no certificate and was not registered, but another, who had obtained a certificate and was duly registered under the act, carried on the said drug store as manager.

It is possible that the provisions of the first section of the act are broad enough to make it unlawful for any unregistered person, whether as owner or proprietor merely, to open any drug or chemical store, or to engage in the business of compounding or dispensing medicines, etc., even though he employ a manager or registered clerk to carry on and conduct the business. If this is so, there is a remedy by the act of 1836, which empowers courts of equity to prevent or restrain " the commission or continuance of acts contrary to law and prejudicial to the interests of the community, or the rights of individuals." But, whether any person other than one who has engaged " as manager " merely, in the business of an apothecary or pharmacist, or of retailing drugs, chemicals and poisons, etc., either directly or indirectly, without having obtained a certificate as required by the act, is criminally liable, is another question. For the answer, we must ascertain whether the act includes any person but a manager; or, in other words, who is embraced within that term.

A person, for example an executor or a creditor, who is obliged to purchase at a judicial sale, may find himself in possession of or the owner of a drug store, and if he cannot dispose of the same by continuing the business, employing managers or registered clerks to conduct the business, very great hardship might occur. The purpose of the act, of course, was to require that persons engaged in the business of druggists or apothecaries should possess practical knowledge of the business and science of pharmacy; but, in my opinion, there is no reason why any person should not be the proprietor or owner of the stock in trade, if he takes no part in conducting or keeping the

store; and for such a case provision is made in the acts of legislatures of other states. In the present case, we have nothing to do with a question of policy, the only question being upon the words in the sixth section of the act, namely, " That no person shall hereafter engage as manager in the business of an apothecary, etc.; " and then follows the penalty for violation or failure to comply with the provisions of that section.

It is contended that it is impossible for an unregistered person to own a drug store, without at least being indirectly engaged as manager in the business of an apothecary or pharmacist.

Judge Kent, in speaking of the rules of interpretation of statutes says: " The words of a statute, if of common use, are to be taken in their natural, plain, obvious and ordinary signification and import; and if technical words are used, they are to be taken in a technical sense, unless it clearly appears from the context, or other parts of the instrument, that the words were intended to be applied differently from their ordinary or their legal acceptation. The current of authority, at the present day, said Mr. Justice Bronson, is in favor of reading statutes according to the natural and most obvious import of the language, without resorting to subtle and forced constructions for the purpose of either limiting or extending their operation: " 1 Kent's Com., 463, and cases there cited. Penal statutes must be strictly construed in favor of the accused; and, so far as statutes for the regulation of trade impose fines and forfeitures, they are to be construed strictly as penal, and not liberally as remedial laws.

I see nothing in the context or any part of the act in question, in this case, that makes it clearly appear that the word or term " manager," used in the sixth section, was intended to be applied differently from its ordinary or legal acceptation. Ordinarily, the term manager means " one who has the conduct or direction of anything; as the manager of a theatre; the manager of a lottery, of a ball, etc: " Webster. To manage, means " to direct, control, govern, administer, oversee." In Anderson's Law D., 650, cases are cited in which the courts of this country and of England have held that the word manager " may mean either a person retained generally, to represent the principal in his absence, or one who has the superintendence of a particular contract or job, in which latter case he is like a

Opinion of Court below.

fellow-workman." It is often applied to an officer of a corporation chosen to superintend its affairs. I am of the opinion that the court ought not, in a case that involves the liberty of a citizen, to reject the plain, obvious and ordinary signification of a word or term used in a penal statute, unless it is very clear that the legislature intended that it should be applied differently.

As before stated, for the purposes of this case it may be conceded that the first section of the act was intended to prevent all persons, whether as owners, proprietors, or managers, from opening and carrying on any retail drug or chemical store; but it seems that by the sixth section only the managers thereof, that is, the persons who have the conduct or direction of the business are liable to be punished by fine and imprisonment, and not an owner who takes no part in conducting the same. One person may own a business and furnish the money necessary to carry it on, and another may have the entire conduct and direction of it, that is to say, be the manager thereof; and who can certainly say that a statute which imposes a penalty on a "manager," for carrying on such a business, applies to both? The court should not resort to a forced construction for the purpose of extending the operation of a penal act so as to cover cases not plainly expressed therein. The citizen ought to be plainly informed by the act itself, before he should be made subject to a fine and imprisonment not exceeding one year.

Not being prepared to say that it is impossible for an unregistered person to own a retail drug store, without being directly or indirectly engaged as manager in the business of an apothecary or pharmacist, I have come to the conclusion that the facts found by the special verdict of the jury do not constitute an offence under the sixth section of the said act of assembly; and it is therefore ordered that the verdict of the jury finding the defendant not guilty, and directing that the prosecutor (Alonzo Robbins being found by the jury to be the prosecutor) pay the costs, is now entered and recorded as the verdict of the jury; exception.

—Thereupon, the commonwealth took this appeal, assigning the order entering judgment for the defendant on the special verdict, for error.

Syllabus.

*Mr. Geo. B. Reimensnyder* (with him *Mr. Voris Auten*, District Attorney), for the appellant.

As to rules of construction generally, counsel cited: Endlich on Statutes, § 27; Commonwealth v. Duane, 1 Binn. 601; Holl v. Deshler, 71 Pa. 299; Commonwealth v. Conyngham, 66 Pa. 99; Howard Ass'n's App., 70 Pa. 344; Commonwealth v. Fraim, 16 Pa. 163; Big Black Imp. Co. v. Commonwealth, 94 Pa. 450; Commonwealth v. Marshall, 69 Pa. 329. As to the construction of the act in question: Blumenthal's Pet., 125 Pa. 412; Oliver's App., 101 Pa. 303; Brocket v. Railroad Co., 14 Pa. 243; State v. Norton, 67 Ia. 641; Bartolett v. Achey, 38 Pa. 273; Powell v. Commonwealth, 114 Pa. 265; Commonwealth v. Capp, 48 Pa. 53; Commonwealth v. Wallace, 114 Pa. 405; People v. Rontney, 117 N. Y. 624.

*Mr. W. H. Hackenberg*, for the appellee.

Counsel cited: Endlich on Statutes, §§ 4, 6, 7, 41; Packer v. Railroad Co., 19 Pa. 211; Pittsburgh v. Kalchthaler, 114 Pa. 547; Irish v. Elliott, Add. 238; Mayor v. Davis, 6 W. & S. 269; Bucher v. Commonwealth, 103 Pa. 529; Am. & Eng. Encyc. of Law, tit. Manager.

PER CURIAM:

This judgment is affirmed upon the opinion of the learned judge of the court below.