Judgment affirmed.

---

## Commomwealth *v.* Samuel M. Zacharias, Appellant.

*Criminal law—Constitutional law—Druggists' acts of 1887 and 1891.*

The act of May 24, 1887, P. L. 190, as amended by the act of June 16, 1891, P. L. 313, prohibiting unqualified persons from engaging in the business of retailing drugs, is unconstitutional.

*Druggists—Certified pharmacist—Police regulation.*

If a statute is only directed against certain persons who are engaged in a given business or against commodities in such manner as to discriminate between those who are engaged in the same trade or pursuit, in aid of some, at the expense of others, such statute is not a police but a trade regulation.   The act of 1891, in that it permits certain unqualified persons to engage in the retail drug business and excludes others, is not an exercise of police power, but presents a condition of class legislation and is therefore unconstitutional, and falls under the ruling of Sayre Borough v. Phillips, 148 Pa. 482.

SMITH, J. concurs in the judgment of reversal but holds that apart from any question of constitutionality a punishable offense has not been committed under the two statutes, and that the case at bar is ruled by Com. v. Johnson, 144 Pa. 377.

Argued Oct. 16, 1896. Appeal, No. 124, Nov. T., 1896, by defendants, from judgment of Q. S. Phila. Co., January Sess., 1896, No. 690, on verdict of guilty. Before RICE, P. J., WILLARD, WICKHAM, REEDER, ORLADY and SMITH, JJ. Reversed.

Motion in arrest of judgment.

Under an indictment for engaging in business of druggist without being registered the jury found a verdict of guilty, and specially found the following facts agreed upon as a special verdict.

It is hereby agreed that the jury may find the following facts:

That the defendant, Samuel M. Zacharias, at and before the bills of indictment were found, was part owner of the three drug stores at Forty-fourth and Girard avenue, Forty-second and Westminster streets, and Forty-fifth and Brown streets, in the city of Philadelphia, commonwealth of Pennsylvania.

That as such he was part owner of the stock and fixtures of said stores, and received from the sales there made a proportion of the profits.

That he employed in the stores regular registered pharmacists to sell drugs and medicines and to put up prescriptions to whom he paid salaries.

That the defendant himself did not in any way put up prescriptions or personally sell the drugs, but that the said defendant has never passed an examination before the State Pharmaceutical Board, neither has he received a certificate therefrom, either as a registered manager or a qualified assistant.

The court allowed a motion in arrest of judgment to be filed, and upon argument overruled the same and sentenced the defendant.

Defendant moved in arrest of judgment, which motion was overruled by McMICHAEL, J., in an opinion reported in 5 Dist. Rep., 475.

Verdict of guilty and sentence that defendant pay a fine of $100 and costs of prosecution and stand committed until this judgment be fully complied with. Defendant appealed.

*Errors assigned* were, (1) overruling defendant's motion in arrest of judgment; (2) entering judgment on verdict and sentencing defendant.

*Charles E. Pancoast* and *John G. Johnson,* with them *Frank P. Prichard,* for appellant.—The verdict establishes only that defendant, not being a registered pharmacist, was part owner in certain drug stores, the drugs and prescriptions being compounded and sold by registered pharmacists employed and paid by defendant.

Two questions therefore arise.

1. Do the facts constitute a misdemeanor defined and punished by act of May 24, 1887, as amended by act of June 16, 1891?

2. If so, is the latter act constitutional?

1. The acts in question can best be construed by considering the previous legislation on the subject, which is as follows: Act of April 4, 1872, P. L. 905; May 24, 1887, P. L. 189. The act of 1887 was construed in the case of Com. v. Johnson, 144 Pa. 377. The act of 1891 is clearly unconstitutional and falls directly within the rule as stated in the case of Sayre Borough v. Phillips, 148 Pa. 482, which was approved in Com. v. Harmel, 166 Pa. 89; Shamokin Borough v. Flannigan, 156 Pa. 43.

It is not claimed that where a subject is within the police power, the court can review the wisdom of the legislature so long as it merely regulates the manner of its conduct, or even forbids the manufacture of a harmless article, as oleomargarine. But to permit certain persons to own and conduct a business by a registered manager, and forbid others, the character of the business or of the persons showing no reason for the distinction, is not to regulate a business but an illegal attempt to legislate for a class: Yick Wo v. Hopkins, 118 U. S. 356; Com. v. Gardner, 133 Pa. 284; City of Titusville v. Brennan, 143 Pa. 642. Reversed, 153 U. S. 289, on ground that it was an attempt to regulate interstate commerce. As to control of discretion see Webber v. Virginia, 103 U. S. 344; Jacob's Appeal, 98 N. Y. 98; Welton v. Mo., 91 U. S. 275; Coe v. Errol, 116 U. S. 517; Loux v. Fox, 171 Pa. 68.

*J. Campbell Lancaster,* with him *Samuel A. Boyle* and *George S. Graham,* district attorneys, for appellee.—Certainly it would seem that a man who buys the stock, employs the clerk and receives the profits, is engaged in the business; that this construction is neither strained nor unusual may be conceived from a

consideration of cases of other states construing similar acts. In State v. Norton, 67 Iowa, 641, the expression "conduct a drug store" was held applicable to a proprietor who took no part in the actual selling of the drugs. In People v. Rontey, 4 N. Y. Sup. 235, affirmed in 117 N. Y. 624, the expression "open or conduct a pharmacy" was held to apply to a proprietor: State v. Forcier, 65 N. H. 42. In the Pharmaceutical Society v. London Supply Association, Law Rept. 4 Q. B. D. 313, the pharmacy act prohibited any person under a penalty, not being duly registered, etc., from keeping an open shop for the sale of poisons, or using the name of chemist or druggist. And it was held that the penalty might be recovered from an incorporated company for keeping a chemist's shop, although the business of such shop was managed by duly registered chemists as servants of the company. This case was reversed in Law Rept. 5 Q. B. Div. 310, but solely on the ground that a corporation did not answer the definition of "person," and therefore, as a corporation, the defendant was not liable for the penalty.

That legislation regulating the drug trade as a proper exercise of the police power is undoubted, as the cases of Dent v. W. Va., 129 U. S. 114, Smith v. Alabama, 124 U. S. 465, and Railway v. Alabama, 128 U. S. 96, will show.

The fact that the drug business is a proper subject for legislative restriction under the police power has never been denied, and it is very doubtful that if the subject-matter of an act once be conceded to be within the police power, the manner of its exercise can be reviewed by the courts: Munn v. Ill., 94 U. S. 113; Mugler v. Kansas, 123 U. S. 623; Powell v. Com., 114 Pa. 265; Powell v. Penna., 127 U. S. 685.

OPINION BY REEDER, J., January 18, 1897:

The defendant was indicted for carrying on, as owner, a retail drug store in the city of Philadelphia. On the trial of the case, the district attorney and the defendant agreed that the jury should find the following facts: "That the defendant, Samuel M. Zacharias, was part owner of three drug stores—at 44th and Girard avenue, 42nd and Westminster streets, and 45th and Brown streets, in the city of Philadelphia, commonwealth of Pennsylvania.

"That as such he was part owner of the stock and fixtures of

said stores, and received from the sales made a proportion of the profits; that he employed in the stores regularly registered pharmacists to sell drugs and medicines and put up prescriptions, to whom he paid salaries; that the defendant did not himself, in any way, put up prescriptions or personally sell the drugs, and that the defendant has never passed an examination before the State Pharmaceutical Board, neither has he received a certificate therefrom either as a registered manager or qualified assistant." The court, thereupon, directed the jury to find a verdict of guilty.

The only questions for the consideration of this court, are whether this offense is one that is within the provisions of the act of assembly of May 24, 1887, as amended by the act of June 16, 1891, and whether the latter act is constitutional. The act of 1887, provided, sec. 1: "Be it enacted, that hereafter no person whomsoever shall open or carry on as manager in the State of Pennsylvania any retail drug or chemical store, nor engage in the business of compounding or dispensing medicines or prescriptions of physicians or selling at retail any drugs, chemicals, poisons or medicines without having obtained a certificate of competency and qualification so to do from the State Pharmaceutical Examining Board and having been duly registered as herein provided, etc."

Section 6, of the same act, provides: " That no person shall hereafter engage as manager in the business of an apothecary or pharmacist or of retailing drugs, chemicals or poisons or compounding or dispensing the prescriptions of physicians either directly or indirectly without having obtained such a certificate as aforesaid, but nothing contained in the act shall interfere in any manner with the business of any practitioner of medicine, etc. . . . . Any person who shall violate or fail to comply with the provisions of this section shall be guilty of a misdemeanor, and on conviction before any court shall be punished by a fine not exceeding one hundred dollars or by imprisonment in the county jail for one year, or either or both at the discretion of the court."

This act was construed in Commonwealth v. Johnson, 144 Pa. 377. In that case it appeared that Johnson was unregistered, that he purchased and conducted the business with his own money and in his own name, that his money paid the rent and

all debts contracted in the business, that he employed one Hines, who was a registered pharmacist, at a salary, to do all and everything to be done in and about that business. Hines ordered and purchased in the name of Johnson all drugs, chemicals, etc., used in carrying on the business, and the same were shipped and delivered in Johnson's name. All the moneys were deposited to the credit of Johnson, and all checks signed by Johnson.

The court below, in a very long, well considered and learned opinion, decided that Johnson did not come within the provisions of the act of 1887, and entered judgment on the verdict for the defendant. The Supreme Court, in a single line affirmed the decision of the court below.

It was there held that ownership did not necessarily imply management, that a manager was one who conducted the business, and was not a mere owner. The court below, in its opinion, in the case now before us, follows this decision, and admits that the defendant cannot be convicted under the act of 1887, but that the special verdict, as found by the jury, brings this defendant fairly within the prohibition and penalty of the act of 1891, which is as follows :

" Hereafter no person whomsoever shall open or carry on as manager in the state of Pennsylvania any retail drug or chemical store nor engage in the business of compounding medicines or prescriptions of physicians or of selling at retail any drugs, chemicals, poisons or medicines without having obtained a certificate of competency and qualification so to do from the State Pharmaceutical Examining Board and having been duly registered as herein provided, but it shall be lawful for the widow or legal representatives of a deceased person who was a manager and registered pharmacist to carry on or continue the business of such deceased pharmacist, provided that the actual retailing dispensing, or compounding of medicines or poisons be done only by an assistant qualified and registered as herein provided. Any person who shall violate or fail to comply with the provisions of this section shall be guilty of a misdemeanor and on conviction before any court shall be punished by a fine not exceeding one hundred dollars."

It will be noticed that the descriptive portions of this act are precisely similar to those contained in the first section of the act of 1887. There is, however, this distinction—that, while

the first section of the act of 1887 has attached to it no penalty for its violation (the penalty being attached to the sixth section of that act), the act of 1891 supplies the penalty which was omitted to the first section of the act of 1887, and that seems to have been its only purpose.

The first section of the act of 1887 has received a construction by Judge ROCKEFELLER, in the case of Commonwealth v. Johnson, supra, which opinion was approved by the Supreme Court, which seems to us entirely sound and logical, and this construction is followed in this case by the learned judge of the court below. He says, " It is possible that the provisions of the first section of the act are broad enough to make it unlawful for any unregistered person, whether as owner or proprietor, merely to open any drug or chemical store, or to engage in the business of compounding or dispensing medicines, even though he employ a manager or registered clerk to carry on the business ; " and again : "As before stated, for the purposes of this case it may be conceded that the first section of the Act was intended to prevent all persons whether as owners, proprietors or managers, from opening and carrying on any retail drug and chemical store."

This brings us to the consideration of whether the defendant comes within the prohibition of the act of June 16, 1891. The words of that act, " nor engage in the business . . . of selling at retail any drugs, chemicals, poisons or medicines without having obtained a certificate," etc., clearly apply to that which the jury found the defendant guilty of doing under their special finding of facts,—that while it is true that the defendant did not personally sell the drugs or compound the prescriptions or dispense the medicines, yet he was engaged in that business although he may have employed some one else to make the sales for him as a manager. It was his business, not the manager's business. The manager was simply acting as his agent or employee, and the Court below was, therefore, fully justified in finding that he had violated the provisions of the act of 1891 and that he was, therefore, guilty of the misdemeanor with which he stood charged under this indictment if the act of 1891 is not unconstitutional.

This brings us to the consideration of the other proposition made by the defendant's counsel—namely : Is the act of 1891 constitutional ?

It is not contended by the learned counsel for the appellant that the prohibitions of the act are unconstitutional; but it is admitted that the regulation of the selling of drugs, the dispensing of medicines and the compounding of prescriptions fairly fall within the police power of the commonwealth, and that, for the protection of the lives, health and safety of the citizens of the commonwealth, they have a right to impose such restrictions upon the sale as will best protect the public.

But they contend that the act is unconstitutional because of the exception permitting certain unregistered persons to carry on the drug business by a registered manager. It permits the carrying on of the drug business by a certain class of people who are unregistered, namely, "the widow and legal representatives of a deceased person who was a manager and registered pharmacist," and it is, therefore, claimed this is special, or class legislation, such as is forbidden by the Constitution of this State.

It must be noticed that this exception is not to settle, by the "widow or legal representatives of the deceased person who was a manager and registered pharmacist," the business referred to; but it is authority for them to carry on such business after the death of the prior owner for an indefinite time. The fact that the purposes of this act are within the police power of the State does not affect this consideration of the constitutionality of the act. In this view, it is not an attempt to regulate the manner of the carrying on a dangerous business which may involve the safety of society, but it is a provision that a certain class of people may carry it on, who are uneducated and incompetent as pharmacists, to the exclusion of all other classes. A different question would be presented were the provisions of this exception applied to the widow or legal representatives of a deceased manager or owner of a drug store to wind up the business for the purpose of settling the estate, but that is not the provision. The provision is to carry on indefinitely the business which has been owned by such deceased manager or owner. The decedent's estate may be settled and distributed between the widow and the heirs or legatees, and yet the widow or legal representatives would have the right, under this exception, to carry on the business under the direction of a competent manager. Could it be successfully con-

tended that the act of 1891 would be constitutional, if this provision were a little broader in its scope, and should except from its provisions *all persons who were widows* in the commonwealth of Pennsylvania? Is it any less unconstitutional because it exempts from its provisions the widows of a certain class of people? Or would it not be clearly unconstitutional if the act provided that *all legal representatives of deceased persons* should have the right to carry on such business, and should be exempted from the provisions of the act of 1891? Is it not just as unconstitutional to say that such business may be carried on *indefinitely* by the legal representatives of a certain class of individuals in the commonwealth of Pennsylvania, even though such deceased persons may have been, during their lifetime, competent pharmacists? We fail to see the distinction, and regard the act as being as unconstitutional in the one instance as it would be in the other.

We think that this exception clearly brings the act of 1891 within the ruling of the Supreme Court in the case of Sayre Borough v. Phillips, 148 Pa. 482. The borough of Sayre passed an ordinance prohibiting all persons from peddling within the limits of that corporation except citizens of the borough. In the opinion rendered by Justice WILLIAMS, he says : " The business of peddling has been treated as a proper subject for police regulation, and controlled in this state since 1784. The legislature has forbidden it to all unlicensed persons, and has prescribed the conditions under which licenses may be obtained from the court. . . . By the organization of a city or borough within its border, the state imparts to its creature, the municipality, the powers necessary to the performance of its functions and to the protection of its citizens in their persons and property. The police power is one of these. Ordinances of cities and boroughs, passed in the legitimate exercise of this power, are, therefore, valid. . . . But it is very clear that a police regulation must be directed against the business or practice that is harmful, not against one or some of · the persons who may be engaged in it. . . . If a statute or municipal ordinance is in reality only directed against certain persons who are engaged in a given business, or against certain commodities, in such manner as to discriminate between the persons who are engaged in the same trade or pursuit, in aid of some, at the expense of

others, such statute or ordinance is not a police but a trade regulation, and it has no right to shelter itself behind the police power of the state or of a municipality. . . . So long, however, as it bears upon all persons impartially, it may fairly claim to be a police regulation, intended to destroy a business that was regarded as injurious, but at the end of the prohibiting section of the ordinance a proviso may be found which exempts all residents of the borough of Sayre from its operation. The proviso converts the police regulation into a trade regulation," and the ordinance is declared unconstitutional.

In Shamokin Borough v. Flannigan, 156 Pa. 43, a borough ordinance which prohibits peddling without a license, excepting those persons holding mercantile licenses " within the borough, who complied with the market ordinance, nor to persons selling or offering to sell the products of their own farm or garden, and hucksters who first attend the borough market and comply with the provisions of the market ordinance," was held to be unconstitutional.

Class legislation, in certain cases, has been held to be valid by our courts, but it is only where certain businesses are restricted to a certain class of people for the purpose of preventing harm to the community which might result if others engaged in it, or to the exclusion of certain people where there may be injury to public safety or morals because of the engaging of certain other people in it. That is to say, the police power of the state can be properly exercised, not only in the restriction or regulation of a business, but also of the people who may engage in it, where danger either to public morals or public peace may result from such conduct of the business by them. Of this character is the legislation which excludes females from keeping bars or waiting in beer saloons or concert halls, and the state regulation which forbids any but cripples to engage in the business of hawking and peddling.

The court, in Commonwealth v. Brinton, 132 Pa. 70, distinctly rest their decision on the ground that the act showed a purpose to exclude able bodied rogues and vagrants, who might commit felonies under the cover of peddling. So too, where the legislation refers, not to the exclusion of a class of people, or the restriction of the business to a certain other class in the exercise of the state's police power, but restrains it to a class of

business, in the conduct of which evil may result because of the character of the business and the way in which it is carried on. On this ground rests the decision of this court in Commonwealth v. Muir, 1 Pa. Superior. Ct. 578.

For these reasons the judgment of the court below is reversed.

CONCURRING OPINION BY SMITH, J., January 18, 1897 :

In all essential facts, there is substantial identity between the case of Com. v. Johnson, 144 Pa. 377, and the present case. In the former, however, the defendant was indicted for " engaging as manager " in the business of a pharmacist, under section 6 of the act of May 24, 1887, P. L. 189. In the present case, the defendant is indicted for "carrying on as manager" the same business, under section 1 of the same act, as amended by the act of June 16, 1891, P. L. 313.

In Com. v. Johnson, the meaning of the word "manager," as used in the act, was judicially settled. It is applied and restricted to the person who immediately conducts, directs or manages the business,—who personally dispenses medicines and compounds prescriptions.

The statute regulates the practice of pharmacy by requiring that drugs be sold and prescriptions compounded by a person qualified as therein provided. Section 1 forbids any unqualified person to " open or carry on, as manager," the business described ; section 6 forbids such person to " engage as manager " in the business. The first provision apparently relates to an owner who may act as manager, while the second as evidently relates to an employee engaged as manager ; and these are obviously the only methods in which the business can be conducted. The act further distinguishes between ownership and management, in providing (section 8) that " no person shall be allowed by the proprietor *or* manager," etc.

Whether the legislature may, under the constitution, forbid ownership of the property mentioned in this statute may be seriously questioned. The statute, however, does not forbid ownership. Nor does it forbid any person to open or carry on the business described, provided he does not act as manager. It merely forbids any unqualified person to open or carry on *as manager* the business in question, or to engage as manager therein. The ground of the distinction is obvious. The pub-

lic are in nowise interested in the ownership of a drug store, or in its financial management. They are interested only in having that branch of its management affecting life and health—the sale of drugs, the compounding of prescriptions, etc.—conducted by a properly qualified person. It is only this department of the business that the act assumes to regulate. The part taken by the defendant in the business, as found by the special verdict, was not within its prohibition.

If the amendment by the act of 1891 could be construed as forbidding ownership, and the carrying on of the business through a properly qualified manager, its constitutionality might well be questioned. A statute by which a business is forbidden to one class of persons while permitted to another class equally within the reason of the prohibition, so far as relates to that protection of the public at which the statute aims, cannot be regarded otherwise than as class legislation, and as such unconstitutional. Hence the act of 1891 must be held ineffective as a prohibition of the acts in which the defendant engaged; and as section 1 of the act of 1887 provides no penalty for its violation, any sentence would be erroneous.

In this view of the two statutes the defendant has committed no punishable offense, and the judgment should be reversed.